**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **MARGARET GARDNER, as the natural** | ) | |
| **Parent and next friend of DAKOTA** | ) | |
| **KINSER, a minor** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:09-cv-0671-TWP-WGH** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **TRISTAR SPORTING ARMS, LTD.,** | ) | |
| | ) | |
| **Defendant.** | | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant's Motion for Summary Judgment [Dkt. 42]. This products liability case centers around an accident that occurred when D.K., then 14 years old, inadvertently shot himself in the leg with a double barrel shotgun, causing physical and bodily injuries that resulted in severe physical and emotional pain and suffering. Plaintiff Margaret Gardner, D.K.'s mother, alleges that this accident was caused by a defect in the incident shotgun, which was manufactured, designed, and distributed by Defendant Tristar Sporting Arms, Ltd. Ms. Gardner also claims that the warnings accompanying the shotgun were inadequate. Defendant disputes all of Plaintiff's claims, countering that the shotgun performs like any other garden-variety shotgun. For the reasons set forth below, the Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's design defect, failure to warn, and breach of warranty claims. The Court DENIES Defendant's Motion on Plaintiff's strict liability manufacturing defect claim.

# I. BACKGROUND

According to Plaintiff's ("Gardner" or "Plaintiff") version of the facts, on April 29, 2007, D.K., then 14 years old, went hunting by himself near his home in Williams, Indiana.  He used a brand new Tri Star Gentry Double Barrel 12 Gauge Shot Gun ("Shotgun") that was manufactured, designed, and distributed by Tristar Sporting Arms, Ltd. ("Tristar" or "Defendant").  The Shotgun was loaned to him by Charles Lane ("Lane"), who had purchased it in its original packaging.  The day before D.K's hunting expedition, Lane gave D.K. an hour-long tutorial on how to use the Shotgun.  In doing so, D.K. and Lane fired the Shotgun roughly ten times, but neither noticed any abnormalities.  It is undisputed that D.K. never read the manual accompanying the Shotgun.

The day of the accident, D.K. drove an all-terrain vehicle ("ATV") to his desired hunting location, and after an unsuccessful hunt, sought to return home.  D.K. opted not to unload the Shotgun prior to mounting the ATV in the event he saw a turkey on the ride home.  D.K. positioned the loaded Shotgun "across [his] lap with the muzzle out [his] left side," so that it was touching both of his thighs.  At this time, the safety mechanism on the Shotgun ("Safety") was in the ON position.  D.K. also testified that the Shotgun did not move in his lap while it was resting on his thighs.  To start the ATV, the operator must use both hands; therefore, D.K. placed both hands on the ATV's handlebars after putting the key in the ignition.  While he had both hands on the handlebars, the gun discharged spontaneously two times in a row: "The first shot kicked it back and it put it at the angle, and then the second shot went off at point-blank on my left leg."  D.K. guessed that the gun fired a second time from the "[r]ecoil of the first shot."

Despite his devastating injury, D.K. was able to climb onto the ATV and drive home.  He was immediately taken to the hospital by Lane and received treatment.  Later, Lane returned to the

scene of the accident where he recovered the Shotgun, observing that the Safety was in the ON position.  Lane testified that, days after the accident, he test-fired the Shotgun, and was able to fire numerous rounds with the Safety ON.  This was also confirmed by Officers Phil Scheutter and Frank Routh of the Indiana Department of Natural Resources.  Plaintiff's expert witness, Richard Ernest ("Ernest") also personally witnessed the Shotgun's two alleged defects: (1) the Shotgun can fire with the Safety ON; and (2) both barrels of the Shotgun can fire as a result of a single trigger pull.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted).  Finally, "Neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubts as to the material facts is sufficient to defeat a motion for summary

judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III.  DISCUSSION

Although Gardner does not specifically reference the Indiana Products Liability Act ("IPLA") in her complaint, her claims are governed by it.  Specifically, the IPLA encompasses all claims that are: "(1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product; regardless of the substantive legal theory or theories upon which the action is brought." *Myers v. Briggs & Stratton Corp.*, 1:09-cv-0020-SEB-TAB, 2010 WL 1579676, at *3 (S.D. Ind. April 16, 2010) (citing Ind. Code § 34-20-1-1).  Since the 1995 amendments to the IPLA, both strict liability and negligence products liability actions fall within the Act. *Id.*; *see also Burt v. Makita USA, Inc.*, 212 F. Supp. 2d 893, 897 (N.D. Ind. 2002).  "A product may be defective within the meaning of the Act because of a manufacturing flaw, a defective design, or a failure to warn of dangers in the product's use." *Natural Gas Odorizing, Inc. v. Downs*, 685 N.E.2d 155, 161 (Ind. Ct. App. 1997) (citing *Hoffman v. E.W. Bliss Co.*, 448 N.E.2d 277, 281 (Ind. 1983)).

Because the IPLA has effectively supplanted products liability common law claims, Gardner's causes of action – framed in terms of strict liability, negligence, and breach of implied warranty –  are treated as merged into IPLA claims. *See Conley v. Lift-All Co., Inc.*, No. 1:03-cv-1200-DFH-TAB, 2005 WL 1799505, at *5 (S.D. Ind. July 25, 2005).  Thus, Gardner's claims are better classified as actions based on: (1) manufacturing defect; (2) design defect; and (3) failure to warn.  Under the IPLA, a strict liability standard applies to manufacturing defect claims, *Myers*, 2010 WL 1579676 , at *3, whereas a negligence standard applies to design defect and failure to warn

claims. *Burt*, 212 F. Supp. 2d at 899.   Tristar argues that summary judgment is appropriate on numerous grounds: (1) Gardner cannot establish proximate cause as a matter of law; (2) Gardner has failed to establish a defect in the Shotgun as a matter of law; and (3) Gardner's breach of warranty claim fails as a matter of law.   Each argument is discussed separately below.

### A. Proximate Cause

Tristar first argues that summary judgment is appropriate because Gardner cannot establish proximate cause as a matter of law.   Regardless of whether Plaintiff alleges a manufacturing defect, design defect, or failure to warn, the plaintiff bears the burden of proving proximate cause. *Myers*, 2010 WL 1579676, at *4.   Proximate cause has two components: (1) causation-in-fact, and (2) scope of liability.   *Kovach v. Caligor Midwest*, 913 N.E.2d 193, 197 (Ind. 2009) (citation omitted).   "To establish factual causation, the plaintiff must show that but for the defendant's allegedly tortious act or omission, the injury at issue would not have occurred." *Id.* at 197-98.   "The scope of liability doctrine asks whether the injury was a natural and probable consequence of the defendant's conduct." *Id.* at 198.   Finally, although proximate cause is often a question of fact, it can become a question of law "[w]hen only a single conclusion can be drawn from the facts." *Correll v. Indiana Dept. of Transp.*, 783 N.E.2d 706, 708-09 (Ind. Ct. App. 2002) (citation omitted).

Tristar's proximate cause argument is premised on the view that Gardner has no evidence to support D.K.'s testimony that the Shotgun discharged spontaneously or that it can be fired when the Safety is ON.[1]   According to Tristar, one sentence in Ernest's expert report is dooming: "The

---

[1]In its briefing, Tristar devotes considerable attention to the argument that Gardner cannot establish proximate cause because expert testimony is required under the circumstances, and Gardner's expert Ernest is unreliable and should therefore be precluded.  This argument,

firearm would only discharge if sufficient force *was exerted on the trigger* to fire the firearm *with the Safety Button in the Fire position*." (emphasis added).  In effect, Tristar argues that this statement amounts to a concession that the gun did what any standard Shotgun is designed to do: "The incident shotgun, like any firearm, is designed to fire when the safety is off and the trigger is pulled." [Dkt. 42-1 at 8].  In Tristar's view, Ernest's statement is fatal to all of Gardner's claims because it eviscerates the element of proximate cause.

Similarly, Tristar argues that Gardner's alleged theories of defect – (1) the Shotgun can be fired when the Safety is ON; and (2) the Shotgun can fire out of both barrels when the trigger is pulled – are not implicated under the facts because no evidence suggests that the trigger was pulled. As such, Gardner cannot show that a defect in the Shotgun caused it to spontaneously fire.  In making this argument, Tristar emphasizes that there is not a scintilla of evidence to support Gardner's allusion to the possibility that D.K inadvertently pulled the trigger or that the trigger got caught on a piece of his clothing.

Although Tristar's argument is cogent and well-crafted, the Court is not persuaded.  First, Gardner has proffered evidence creating a genuine issue of material fact relating to whether the alleged Safety and barrel defects constitute proximate causes.  Pursuant to the Court's previous Order on Defendant's Motion to Preclude the Testimony of Plaintiff's Expert Richard Ernest [Dkt. 77], Ernest can testify as to: (1) whether the firearm can discharge while the Safety is in the ON position, or at least while giving the impression the Safety is ON when it is not; and (2) whether a single trigger pull can cause the firearm to fire from both the left and right barrels.  Armed with this

---

however, was rejected via the Court's Order on Defendant's Motion to Preclude the Testimony of Plaintiff's Expert Richard Ernest. [*See* Dkt. 77].

testimony, Gardner can potentially establish that the accident would not have occurred but for these alleged defects. [*See* Dkt. 66 at 16] ("Had this SHOTGUN had a properly functioning safety, it would not have discharged on April 29, 2007 and injured D.K. . . .[A]s it was the discharge from the second barrel that injured D.K., the fact that this SHOTGUN, contrary to its design, can and will fire both barrels from a single trigger pull . . . establishes that this defect is also a direct and proximate cause.").  In light of the evidence suggesting that the Shotgun's alleged defects are potential factual causes, a jury must decide whether or not the defects constitute proximate causes. *See Kovach*, 913 N.E.2d at 198 (observing that the issue of causation is only a question of law if reasonable minds cannot disagree as to causation-in-fact).

Second, contrary to Tristar's assertions, Ernest has offered a potential explanation for the Shotgun's spontaneous discharge. In his expert report, Ernest posited the following:

> It was also noted during the dissasembly of the shotgun . . . that the sear surfaces and other internal surfaces of the fire control mechanism show a significant amount of surface debris.  Such debris has been implicated in other cases where a buildup of sufficient debris on the fire control mechanisms of the firearm may have lead to an incomplete or insecure lockup of the hammer/trigger sear surfaces or their accompanying linkages thus leading to an inadvertent or accidental discharge of the firearm . . . without the trigger being pulled.

Pursuant to the Court's previous Order [Dkt. 77], Gardner is free to advance this theory.  The jury may find it implausible – perhaps even far-fetched – but it is sufficient to create a genuine issue of material fact.  Under the circumstances, proximate cause is a question squarely within the province of the jury.

**B.**     ***Gardner's Individual Causes of Action***

In its bid for summary judgment, Tristar attacks each of Gardner's potential claims individually.   As discussed, Gardner's causes of action are best discussed in terms of: (1) manufacturing defect; (2) design defect; (3) failure to warn; and (4) breach of implied warranty.  Each cause of action is analyzed separately below.

**1.     Manufacturing Defect Claim**

To establish a prima facie case of strict liability for a manufacturing defect, the plaintiff must show: (1) the product is defective and unreasonably dangerous; (2) the defective condition existed at the time the product left the defendant's control; and (3) the defective condition is the proximate cause of the plaintiff's injuries. *Gaskin v. Sharp Electronics Corp.*, No. 2:05-CV-303, 2007 WL 2819660, at *5 (N.D. Ind. Sept. 26, 2007) (citing *Natural Gas Odorizing, Inc. v. Downs*, 685 N.E.2d 155, 160 (Ind. Ct. App. 1997)).   Tristar argues that Gardner cannot meet any of these elements.   To buttress this argument, Tristar emphasizes that Gardner has no explanation for the Shotgun's alleged spontaneous discharge.  The Court is not persuaded.  Tristar's argument here is essentially just its proximate cause argument, rejected above, recast in terms of a manufacturing defect claim.

Pursuant to element (1) above – "the product is defective and unreasonably dangerous" – the Court must first analyze what constitutes a *defect* under the IPLA.  Specifically, a product is in a defective condition if, at the time it is conveyed by the seller to another party, it is in a condition: (1) not contemplated by reasonable persons among those considered expected users or consumers of the product; and (2) that will be unreasonably dangerous to the expected user or consumer when used in reasonably expectable ways of handling or consumption. Ind. Code § 34-20-4-1**.**  In this context,

"unreasonably dangerous" refers to any situation in which the use of a product exposes the user or consumer to a risk of physical harm to an extent beyond that contemplated by the ordinary consumer who purchases the product with the ordinary knowledge about the product's characteristics common to the community of consumers. Ind. Code § 34-6-2-146.

Gardner's defectiveness argument is essentially two-fold: (1) the Shotgun is defective because it can fire when the Safety is ON; and (2) the Shotgun is defective because both barrels can fire from a single trigger pull. Gardner has evidence to support both theories. D.K. testified that the Safety remained ON at all relevant times; Lane testified that he found the Shotgun with the Safety in the ON position; and officers have testified that they were able to fire the Shotgun with the Safety in the ON position. What is more, Ernest has witnessed the Shotgun in action, concluding, "The Safety Button on this shotgun is defective as is found, and this condition leads to an unreasonably unsafe shotgun as is." Similarly, Gardner has offered evidence, primarily from Ernest, indicating that the Shotgun can fire both barrels from a single trigger pull. Even Tristar's own expert witness, Lucien Haag, conceded that if the Shotgun can do this, it would be a "shortcoming." Finally, Ernest's expert report highlights that: the Shotgun's Safety can be moved from a safe position to a position where the Shotgun can fire "with very little force"; the Shotgun contains a very short throw distance – that is, the distance the Safety needs to be moved in order to allow the Shotgun to fire; and the Shotgun requires a lighter trigger pull force than most American-made shotguns. Given the available direct evidence coupled with expert testimony, genuine issues of material fact exist as to the defectiveness of the Shotgun and whether or not it poses an unreasonable danger.

In addition, Gardner has proffered evidence that the Shotgun was in a defective condition at the time it left Tristar's control. Lane testified that he purchased the Shotgun in its original

packaging, and the Shotgun was used for the very first time on April 28, 2007 – the day before D.K's accident.  Further, no evidence hints at the possibility that alterations or modifications were ever made to the Shotgun.  Finally, as discussed in detail above, genuine issues of material fact exist as to proximate cause.  Simply stated, summary judgment is inappropriate for this claim.

### 2.      Design Defect Claim

Tristar next argues that Gardner's defective design claim must be dismissed as a matter of law.  To establish a prima facie case under a defective design theory, a plaintiff must show: (1) the manufacturer placed into the stream of commerce a defectively designed, unreasonably dangerous product; (2) a feasible safer alternative product design existed; and (3) the product defect proximately caused the plaintiff's injuries." *Gaskin*, 2007 WL 2819660, at *4 (citing *Barnard v. Saturn Corp.*, 790 N.E.2d 1023, 1032 (Ind. Ct. App. 2003)).

As discussed, genuine issues of material fact exist regarding elements (1) and (3).  As Tristar points out, however, Gardner has failed to offer a shred of evidence regarding a feasible safer alternative.  The absence of this element is fatal; to maintain a viable claim, Gardner was required to show that "the product could have been redesigned at a reasonable cost to avoid the risk of injury." *Mesman v. Crane Pro Servs.*, 409 F.3d 846, 849 (7th Cir. 2005) (applying Indiana law) (citations omitted); *see also Burt*, 212 F. Supp. 2d at 900 (granting defendant's motion for summary judgment where "plaintiff has wholly failed to show a feasible alternative design that would have reduced the risk of injury."); *Conley v. Lift-All Co., Inc.*, No. 1:03-cv-1200-DFH-TAB, 2005 WL 1799505, at *13 (S.D. Ind. July 25, 2005) ("An expert is normally required in design defect cases because the feasibility of an alternative design and the likelihood that an alternative design would have prevented an injury are usually technical questions outside the experience of lay persons.").  Here, the record

10

is bereft of evidence advancing a feasible safer alternative. The Court refuses to slog through the record to manufacture a feasible safer alternative that would allow Gardner to survive summary judgment.

In her brief, Gardner wholly ignored Tristar's feasible safer alternative argument, effectively acquiescing and conceding the point. *See Gaskin*, 2007 WL 2819660, at \*4 (citing *Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003), which held that arguments not presented to the court in response to a summary judgment motion are waived). Accordingly, summary judgment on Gardner's design defect count is warranted.

### 3.      Failure to Warn Claim

Tristar also argues that Gardner's failure to warn claim must also be dismissed as a matter of law. A product is defective under a theory of failure to warn if the seller fails to: "(1) properly package or label the product to give reasonable warnings of danger about the product; or (2) give reasonably complete instructions on proper use of the product; when the seller, by exercising reasonable diligence, could have made such warnings or instructions available to the user or consumer." Ind. Code § 34-20-4-2. Specifically, under this theory, plaintiff must show that the manufacturer or seller failed to exercise reasonable care. *Rushford*, 868 N.E.2d at 810. Finally, "the adequacy of warnings, which implicates breach of duty, is generally a question of fact for the trier of fact to resolve." *Id.*

Tristar argues that summary judgment is warranted on two grounds: (1) the Shotgun is not defective; and (2) D.K. failed to read the manual accompanying the Shotgun. On the first ground, Tristar points out that no duty to warn exists where there is no defective design. *See Rogers v. Ford Motor Co.*, 952 F. Supp. 606, 617 (N.D. Ind. 1997) (holding that "it is axiomatic that there can be no

duty to warn where no design defect has been shown").  The Court is not persuaded on this argument.  As discussed above, genuine issues of material fact potentially exist regarding the defective design of the Shotgun – element (1) of the prima facie case for a defective design claim.  Gardner's defective design claim failed because she failed to offer a feasible safer alternative – element (2) of the prima facie case for a defective design claim.

The Court is, however, persuaded by Tristar's second argument.  It is undisputed that D.K failed to read the instructions.  "Evidence that the plaintiff, injured party, or other party instrumental in the use of the product leading to an injury failed to read instructions or warnings which were provided with the product may be sufficient to entitle the defendant to judgment as a matter of law, at least where the failure to read the instructions or warnings is not disputed." 63A AM. JUR. 2D. *Products Liability* § 1132.  This proposition is logical; after all, absent a reading of the warnings, no causal link can exist between the alleged defect and the injury. *Id*. ("The plaintiff in such a case has defeated the very purpose behind the duty to warn and cannot fairly inveigh against the quality of a warning and seek money damages based on a defective warning when the plaintiff's failure to read the warning means that the defect could not have contributed to the injury, and the giving of an adequate warning would have been futile.").

On this point, cases from other jurisdictions are instructive. *See, e.g., Powell v. Harsco Corp.*, 433 S.E.2d 608, 610 (Ga. Ct. App. 1993) (granting summary judgment because of absence of proximate cause, recognizing, "We do not decide whether, as a matter of law, the [warning is adequate], because the failure of the installer to follow or even to read the installation instructions from the sales literature renders all remaining factual issues immaterial."); *J & W Enters., Inc. v. Economy Sales, Inc.*, 486 N.W.2d 179, 181 (Minn. Ct. App. 1982) (granting summary judgment on

failure to warn claim where plaintiff failed to read warnings, quoting a case from the Eighth Circuit Court of Appeals for the proposition that "an issue as to the adequacy of a warning necessarily presupposes that the operator has read the warning."); *Foltz v. Smith & Wesson Corp.*, No. 3:08-cv-0858-K, 2009 WL 2596598, at *3 (N.D. Tex. Aug. 20, 2009) ([B]ecause plaintiff failed to read the safety instructions . . .[he] cannot establish the necessary causal link between allegedly inadequate warnings and his injury to survive summary judgment.").

Although not precisely on-point, a case from the Indiana Court of Appeals, *Deaton v. Robison*, 878 N.E.2d 499 (Ind. Ct. App. 2007), offers useful guidance.  There, a shooting accident victim brought an action against a gun manufacturer, alleging it was negligent in failing to offer adequate warnings of the dangers associated with the gun.  The Court of Appeals affirmed the trial court's entry of judgment on the evidence for the gun manufacturer, observing that because the individual who fired the gun did not read the manual, the evidence showed that any specific warnings that plaintiff contends should have been given "would not have been heeded." *Id.* at 503-04 n.1. Similarly, here, the evidence shows that even if the warnings Gardner seeks were given, D.K. would not have heeded them.

Given D.K.'s admission that he did not read the manual, Gardner simply cannot trace how allegedly inadequate warnings *caused* D.K.'s injury.   After all, under the circumstances, even the most exhaustive warnings would not have staved off D.K's injury. *See Wade v. Diamant Boart, Inc.*, 179 Fed. Appx. 352, 356 (6th Cir. 2006) ("Since Plaintiff did not read the operator's manual, he would not have been aware of any additional or more specific even if they have been provided. Consequently, any such failure to adequately warn did not cause Plaintiff's injury"); *Alvarez v. General Wire Spring Co.*, 8:07-cv-1319-T-33TGW, 2009 WL 248264, at *9 (M.D. Fla. Feb. 1, 2009)

(granting summary judgment, holding, "Because [plaintiff] did not read the warnings, the [plaintiff] cannot show that the failure to warn was the proximate cause of [his] injuries."). Simply stated, giving additional warnings would have been futile.

In her brief, Gardner ignores this issue. Arguably implicit in her argument, however, is the notion that D.K.'s failure to read the manual is of no import because the warnings were inadequate in that they did not warn the user that both barrels could fire from a single trigger pull or that the Shotgun could be fired with the Safety ON. In other words, the manual falls short even if all information and warnings were imputed to D.K. The Court is not persuaded. First, the Court already knows that D.K. did not read the manual; there is no reason to suspend reality and pretend that D.K. absorbed the manual's contents. To establish a claim for failure to warn, "plaintiff must show some reasonable connection between the omission of the manufacturer and the damages he suffered; i.e. that the injury would have been less likely to occur had a different warning been provided." *Conley*, 2005 WL 1799505, at *12. Even if the warnings as to the Safety and barrel were contained in the manual, D.K. would not have read them or relied upon them, thereby extinguishing proximate cause.

Second, contrary to Gardner's contentions, if D.K would have read and heeded the manual's instructions, the accident would have been avoided. The manual admonishes the user not to rely on the Safety: "Do not rely on your gun's safety . . . [it] is a mechanical device and is not intended as a substitute for common sense or safe gun handling." Additionally, the manual states, "Never transport a loaded gun . . . Do not place a loaded gun into a vehicle . . . The gun should be unloaded and placed into a case when not in use." D.K. failed to abide these warnings, mounting the ATV with

14

a loaded gun, even though his hunter's class taught him that this was inappropriate.  For these

reasons, summary judgment is warranted.

      **4.**       **Breach of Implied Warranty Claim**

      As Tristar notes, breach of implied warranty claims have been subsumed by the IPLA.

*Cincinnati Ins. Co. v. Hamilton Beach/Proctor-Silex,,Inc.*, No. 4:05-CV-49, 2006 WL 299064, at *3

(N.D. Ind. Feb. 7, 2006) ("Indiana courts regard claims for breach of implied warranty sounding in

tort as redundant with strict liability claims.").  Yet again, Gardner failed to address this argument

in her brief, presumably a tacit concession that this is the correct state of the law.  Accordingly,

summary judgment on this count is warranted.

## IV. CONCLUSION

      For the reasons noted herein, the Court GRANTS Defendant's Motion for Summary Judgment

[Dkt. 42] with respect to Plaintiff's design defect, failure to warn, and breach of implied warranty

claims.  The Court DENIES Defendant's Motion for Summary Judgment with respect to Plaintiff's

strict liability manufacturing defect claim.


      SO ORDERED.

      Dated: 09/15/2010

                                        Hon. Tanya Walton Pratt, Judge
                                        United States District Court
                                        Southern District of Indiana


Distribution attached.

15

Distribution to:

**William Frederick Conour**
CONOUR LAW FIRM LLC
wfc@tortsurfer.com

**Timothy Francis Devereux**
Conour Law Firm, LLC
tfd@tortsurfer.com

**Jeffrey Allen Hammond**
CONOUR LAW FIRM, LLC
jah@tortsurfer.com

**Thomas J. Jarzyniecki , Jr**
KIGHTLINGER & GRAY
tjarzyniecki@k-glaw.com

**Jeffrey Martin Malsch**
PISCIOTTI MALSCH & BUCKLEY PC
jmalsch@pmblegalfirm.com

**Anthony M. Pisciotti**
PISCIOTTI MALSCH & BUCKLEY PC
apisciotti@pmblegalfirm.com

**Michael Wroblewski**
KIGHTLINGER & GRAY
mwroblewski@k-glaw.com